**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

SILVANO HERAS-QUEZADA,

     Petitioner,

v.                                   No. CV 12-0615 JP/WPL

RAY TERRY, et al.

     Respondents.

**PROPOSED FINDINGS AND RECCOMENDED DISPOSITION**

Silvano Heras-Quezada petitioned the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) He claims that Immigrations and Customs Enforcement ("ICE"), a bureau within the Department of Homeland Security ("DHS"), has misapplied its mandatory detention statute and is unlawfully detaining him without a bond hearing. (*Id*. at 1.) His petition requests that the Court remand his case to the Executive Office for Immigration Review ("EOIR") for a bond hearing under 8 U.S.C. § 1226(a) and set a time limitation or, alternatively, order Respondents to release him if they cannot meet the time limitation.[1] (*Id*. at 1.) The Court referred this case to me to make findings of fact, conduct legal analysis, and recommend an ultimate disposition. (Doc. 4.) Having carefully reviewed the pleadings and the law, I recommend that the Court grant Heras-Quezada's petition for a writ of habeas corpus and order the EOIR to hold a bond hearing in this case within twenty-one days of the entry of an order adopting these findings and recommendations.

---

[1] Heras-Quezada entitled his motion "Petition for Writ of Habeas Corpus and Immediate Release from Custody," but the body of his motion requests that the Court remand his case for a bond hearing, not that it release him from ICE custody immediately. (Doc. 1 at 1.) I will consider the relief requested in the body of the motion.

## FACTUAL & PROCEDURAL BACKGROUND

At the age of nine, Heras-Quezada, a Mexican citizen, became a lawful permanent resident of the United States. (Doc. 1 at 6.) Sixteen years later, in November 2006, he was arrested on allegations of burglary. (*Id.*) On February 17, 2009, he pled no contest to one count of conspiracy to commit aggravated burglary and one count of tampering with evidence. (*Id.*; Doc. 5 at 2.) He was convicted on April 15, 2010, and given a deferred sentence of four and a half years, but he was not taken into custody after his conviction. (Doc. 1 at 7; Doc. 5 at 2.)

Almost two years later, on March 26, 2012, ICE arrested Heras-Quezada and took him into custody under the mandatory detention provision of 8 U.S.C. § 1226(c). (Doc. 1 at 7; Doc. 5 at 1-2.) ICE charged Heras-Quezada as a removable alien under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act based upon his alleged conviction of an aggravated felony theft offense. (Doc. 1 at 7; Doc. 1 Ex. 2.)

Under the mandatory detention provision, Heras-Quezada is not entitled to a bond hearing, and an immigration judge would not have jurisdiction over a bond motion. *See* 8 U.S.C. § 1226; 8 C.F.R. § 1008.19(h)(2)(i)(D); *Matter of Rojas*, 23 I. & N. Dec. 117 (B.I.A. 2001). Any motion for bond redetermination at the administrative level would be an act of futility, so Heras-Quezada has not pursued administrative remedies.[2] (Doc. 1 at 6.) Alternatively, he filed this habeas petition pursuant to 28 U.S.C. § 2241, requesting that this Court remand his case to an EOIR court for a bond hearing. (Doc. 1.) After an initial review of the petition, I ordered Respondents Ray Terry, Warden of Otero County Processing Center, Adrian Macias, the El Paso Field Office Director for ICE, and Eric Holder, Jr., United States Attorney General, to file an

---

[2] Defendants concede that Heras-Quezada is precluded from a bond hearing and that administrative exhaustion is excused. (Doc. 5 at 1.) I agree. *See generally Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1 (2000) (holding futility is an exception to administrative exhaustion).

Answer. (Doc. 4.) Respondents filed an answer in opposition to habeas relief and requested that

the court dismiss Macias and Holder from the suit as improperly named parties. (Doc. 5.) Heras-

Quezada filed a reply and notice of briefing complete. (Doc. 6; Doc. 7.)

ANALYSIS

**I.      Naming of Holder and Macias**

Before discussing the merits of the petition, I must determine whether Holder and Macias

are properly named defendants. Typically, only the warden of the detention facility is the proper

respondent in a habeas petition case. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004).

However, *Rumsfeld* noted that there was a circuit split as to whether the Attorney General was a

proper respondent in a habeas petition filed by a detained alien and explicitly declined to resolve

the conflict. *Id.* at 435 n.8. A majority of the circuits to have considered this issue have held that,

under the immediate custodian rule, the warden is the proper respondent because he has physical

custody of the petitioner. *See, e.g., Robledo-Gonzales v. Ashcroft*, 342 F.3d 667 (7th Cir. 2003)

(Attorney General is not proper respondent); *Vasquez v. Reno*, 233 F.3d 688 (1st Cir. 2000)

(same); *Yi v. Maugans*, 24 F.3d 500 (3d Cir. 1994) (same). The Sixth Circuit also adopted the

immediate custodian rule, with the caveat that in very "extreme" circumstances, the Attorney

General might be the appropriate respondent. *See Roman v. Ashcroft*, 340 F.3d 314, 323, 325

(6th Cir. 2003). *Roman* cited to *Demjanjuk v. Meese*, 784 F.2d 1114 (D.C. Cir. 1986), as an

example of an extreme circumstance. In *Demjanjuk*, the court found that the Attorney General

was properly named as a defendant when the petitioner was held in custody at an undisclosed

location, known not even to petitioner's counsel, while awaiting extradition. 784 F.2d at 1115-

16.

The Ninth Circuit is the only circuit to have explicitly held that the Attorney General is a proper respondent to a habeas petition filed by an alien challenging his detention. *See Armentero v. INS*, 340 F.3d 1058 (9th Cir. 2003). However, the circuit later withdrew its decision, with directions that it may not be cited as precedent. *Armentero v. INS*, 382 F.3d 1153 (9th Cir. 2004)

Heras-Quezada argues that Holder and Macias are properly named defendants, and relies on the exception articulated by the Sixth Circuit in *Roman*. (Doc. 1 at 4.) While the facts of this case are a far cry from that of *Demjanjuk,* I am inclined to agree with his position. Warden Terry alone presumably has no authority to order a bond hearing before the EOIR judge; EOIR is an office within the Department of Justice, and the Otero County Processing Center is under the supervision of DHS/ICE. *See* 8 C.F.R. §§ 236.1, 1003.0(a); UNITED STATES DEPARTMENT OF JUSTICE, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, THE IMMIGRATION COURT PRACTICE MANUAL (2009) *available at* http://www.justice.gov/eoir/vll/OCIJPracManual/ocij_page1. htm; *see also Ortiz v. Holder*, Case No. 2:11CV1146 DAK, 2012 U.S. Dist. LEXIS 35317, at *6 n.3 (D. Utah Mar. 14, 2012). Since both the Attorney General and DHS have shared jurisdiction in this matter, and the relief requested by the petitioner implicates both administrative agencies, I believe that this qualifies as an exception to the immediate custodian rule. Therefore, I recommend that the Court deny Repondents' request to dismiss Holder and Macias.

## II.    Mandatory Detention Under § 1226(c)

Under 8 U.S.C. § 1226(c), DHS[3] must take into custody any alien who is deportable by reason of committing an aggravated felony "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to

---

[3] The text of § 1226(c) grants authority to the Attorney General. However, the Homeland Security Act of 2002, Pub L. 107-296, Title IV § 402 (codified, in part, at 8 U.S.C. § 1103 (2012)), transferred responsibility of immigration enforcement to the Secretary of DHS. Thus, DHS, and not the Department of Justice, is the acting agency in this matter.

whether the alien may be arrested or imprisoned again for the same offense." *See* 8 U.S.C. § 1226(c) (2012); *see also* Immigration and Nationality Act § 237(a)(2)(A)(iii), 8 U.S.C. § 1227 (a)(2)(A)(iii) (2012). DHS/ICE is presently detaining Heras-Quezada under this mandatory detention provision, but Heras-Quezada claims that the statute is inapplicable. He argues that DHS/ICE may only detain an alien under this provision upon his immediate release from custody, and, since two years passed between his release and his arrest, the statute no longer applies to him. (Doc. 1 at 11.)[4]

Respondents counter that the Bureau of Immigration Appeals ("BIA") properly interpreted § 1226(c) to include detention at any point after release from criminal custody. (Doc. 5 at 3 (citing *Matter of Rojas*, 23 I. &. N. Dec. at 117).) Respondents argue that I must give deference to the BIA's interpretation of the statute and find that Heras-Quezada is properly detained under the terms of § 1226(c). To resolve this issue, I turn to basic principles of administrative law and statutory interpretation.

It is well settled that administrative agencies have the authority to interpret the very statutes that they administer. *Morton v. Ruiz*, 415 U.S. 199, 231 (1974). It is as equally well settled that the judicial branch is the final arbiter on statutory construction and may review an agency's interpretation. *See FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 32 (1981); *SEC v. Sloan*, 436 U.S. 103, 117-118 (1978); *Fed. Mar. Cmm'n v. Seatrain Lines, Inc.*, 411 U.S. 726, 745-746 (1973); *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 385 (1965). However, the courts hesitate to ride roughshod over the interpretations of law provided by the

---

[4] Heras-Quezada also advances a second argument challenging whether pre-conviction custody satisfies the statute's language of "when . . . released[.]" (Doc. 1 at 8-9.) He claims that since § 1226 is only triggered by a conviction, the statute only includes release from post-conviction custody. (*Id.* at 9.) The Court rejected this argument in *Melero-Valdez v. Terry, et al.*, No. 12:11-CV-897 JP/LAM (D.N.M. April 18, 2012), and Heras-Quezada raises it only to preserve the issue for appeal. (*Id.* at 5 n.1.) Since I recommend granting his petition on the basis of his first argument, I will not consider the merits of this one.

agencies. Rather, under *Chevron, U.S.A., Inc. v. National Resource Defense Council, Inc.*, 467 U.S. 837 (1984), a court reviewing an agency's statutory construction applies a two-part test.[5]

First, the court must determine whether the statute is ambiguous. *Id*. at 842. If the statute is unambiguous and "the intent of Congress is clear, that is the end of the matter." *Id*. To determine the meaning of the statute, the court relies on "regular interpretive [methods]" of statutory construction, such as the "text, structure, purpose, and history of the [statute], along with its relationship to other federal statutes." *Gen. Dynamics Land Sys. v. Cline*, 540 U.S. 581, 600 (2004) (citing *Chevron,* 467 U.S. at 843 n.9); *see also Contreras-Bocanegra v. Holder*, 678 F.3d 811, 816-17 (10th Cir. 2012) (analyzing the plain text and structure of the statute and the policy supporting the amendment to the law at step one). Unless the statute's text, purpose, or legislative history suggests otherwise, the court should assume that Congress intended the words of the statute "to carry their ordinary, contemporary, [and] common meaning." *Hackwell v. United States*, 491 F.3d 1229, 1241 (10th Cir. 2007).

If the court determines that the statute is ambiguous, then it must proceed to step two and determine whether the agency's construction is reasonable. *Id*. at 843. The court's review at this step is very narrow, and it typically affords great deference to the agency's interpretation. *Massachusetts v. EPA*, 549 U.S. 497, 527 (2007).

With this legal framework in mind, I embark on a linguistic mission: determining the meaning of "when" and considering whether the word is ambiguous. The mandatory detention provision instructs ICE to take an alien into custody "when the alien is released[.]" 8 U.S.C. §

---

[5] There is arguably a third step to this process, often referred to "*Chevron* Step Zero," in which the court must first determine whether Congress granted the agency the authority to make rules and, thus, interpret the statute at issue. *United States v. Mead Corp.*, 533 U.S. 218, 226-227 (2001); Cass R. Sunstein, *Chevron Step Zero*, 92 VA. L. REV. 187, 191 (2006). Petitioner correctly refrained from challenging the BIA's authority on this matter. *See generally Carpio v. Holder*, 592 F.3d 1091, 1097 (10th Cir. 2010) (holding published decisions from the BIA qualify for *Chevron* deference).

1226(c). At first glance, the phrase appears to have a temporal component, which conveys a sense of immediacy or sequence. The plain meaning of "when . . . released" indicates that ICE must arrest the alien immediately or close to the time of release from custody. Had Congress intended the detention provision to apply to anyone who had ever been released, they might have simply legislated that the arrest may occur "*after* the alien is released." This would have clearly encompassed the BIA's present interpretation, since it undoubtedly includes any period of time occurring from the time of release onward. However, Congress did not write "after"; Congress wrote "when."

A look at the dictionary confirms my initial suspicions. The American Heritage Dictionary defines "when" as meaning "at what time," "at the time that", "as soon as," and "during the time at which." AMERICAN HERITAGE DICTIONARY 1958 (4th ed. 2000). These definitions likewise indicate a sense of immediacy.

Looking at the statute as a whole, the overall text reinforces a sense of timeliness. The section clarifies that the alien may be taken into custody "without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c)(1)(D). The choice to clarify that ICE need not wait to take someone into custody, and that it may be done if the alien remains under some form of supervision, enhances the understanding that the detention must occur soon after release.

I am far from alone in my conclusion that § 1226(c) unambiguously requires that the arrest immediately follow release. *See, e.g., Louisaire v. Muller*, 758 F. Supp. 2d 229, 236 (S.D.N.Y. 2010); *Khodr v. Adduci*, 697 F. Supp. 2d 774, 774-75 (E.D. Mich. 2010); *Scarlett v. Dept. of Homeland Sec., ICE*, 632 F. Supp. 2d 214, 219 (W.D.N.Y. 2009); *Waffi v. Loiselle*, 527

7

F. Supp. 2d 480, 488 (E.D. Va. 2007); *Quezada-Bucio v. Ridge*, 317 F. Supp. 2d 1221, 1231 (W.D. Wash. 2004); *Alwaday v. Beebe*, 43 F. Supp. 2d 1130, 1133 (D. Or. 1999); *Ortiz*, 2012 U.S. Dist. LEXIS 35317, at *11 (D. Utah Mar. 14, 2012); *Parfait v. Holder*, No. 11-4877 (DMC), 2011 WL 4829391 at *6 (D.N.J. Oct. 11, 2011); *Dang v. Lowe*, No. 1:CV-10-0446, 2010 WL 2044634 (M.D. Pa. May 20, 2010). *But see Hosh v. Lucero*, 680 F.3d 375, 377 (4th Cir. 2012) (holding statute is ambiguous and deferring to BIA's interpretation in *Rojas*).

 In fact, this district recently considered a factually similar case and held that "when . . . released" required immediate arrest and that an individual could not be detained under § 1226(c) when he was arrested one year after conviction. *See Melero-Valdez v. Terry, et al.*, No. 12:11-CV-897 JP/LAM (D.N.M. April 18, 2012).

"When" is not a technical term or a term of art; it has a clear meaning and usage in the English language. Under § 1226(c), ICE must detain an individual immediately following his release from custody, but this mandatory detention provision does not extend indefinitely to cover all time after the release date. Since the statute is unambiguous, I do not need to consider the BIA's interpretation of "when" in *Matter of Rojas*, let alone give it deference. The intent of Congress is clear, and it is the intent of Congress, not the interpretation of the BIA, that I must enforce.

In light of the plain and unambiguous meaning of "when . . . released," I can say with confidence that arresting an alien two years after his release from custody does not fall within this statute. I need not decide what constitutes immediacy for the purpose of this statute, since two years would clearly fall outside the appropriate time limit. Accordingly, I recommend that the Court grant Heras-Quezada's petition.

CONCLUSION

For the foregoing reasons, I recommend that the Court grant Heras-Quezada's petition for a writ of habeas corpus (Doc. 1), and that he be brought before an immigration judge within twenty-one days of the entry of an order adopting this recommendation. I further recommend that the Court order that if the EOIR cannot hold a bond hearing within that time, Heras-Quezada be released from ICE's custody.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_William P. Lynch_
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket

9